WALTER G. GROSSMAN, Appellant, v. GLOBE-DEMOCRAT PUBLISHING COMPANY.—149 S. W. (2d) 362.

Division Two, April 3, 1941.

*Chas. F. Mueller, Shepard R. Evans* and *P. K. Johnson* for appellant.

*Jones, Hocker, Gladney & Grand* for respondent.

WESTHUES, C.—Plaintiff, Grossman, filed this suit against defendant publishing company to recover actual damages in the sum of $25,000 and a like sum as punitive damages, for publishing an alleged libelous article. Defendant filed a demurrer to the petition which was overruled. Defendant then filed an answer to the merits. When the case was called for trial the judge who had ruled on the demurrer was not presiding. When plaintiff called his first witness to testify the defendant's counsel objected to the introduction of evidence on the ground that the petition failed to state a cause of action. The court heard arguments on the question and sustained the objec-

tion. Judgment was entered in favor of the defendant and after an unsuccessful effort to obtain a new trial plaintiff appealed.

The petition will not be set forth in full as many allegations thereof are not pertinent to the issues here involved. From the petition we learn that appellant was a Justice of the Peace within and for the city of Belleville, Illinois, and also a member of the legal profession in good standing. It was alleged that in the city of St. Louis the defendant published a newspaper known as the Globe-Democrat, which enjoyed a wide circulation in localities where appellant was well and favorably known. Plaintiff's petition then stated as follows:

"Plaintiff for his cause of action states that on or about May 16th, 1930, one Meyer Hurwitz, for and on behalf of the Meyer Hurwitz Jewelry Company, a corporation, of the City of East St. Louis, Illinois, paid to the plaintiff, a duly elected and qualified Justice of the Peace as aforesaid, and while in the exercise of the duties of his said office, the sum of $234.75, representing personal property taxes due the County of St. Clair and State of Illinois for the year 1926; and that plaintiff issued his receipt No. 6270 to said Meyer Hurwitz Jewelry Company on said date, reciting therein that plaintiff had received the sum of $234.75 as payment of personal property taxes for the year 1926; that on the 2nd day of August, 1930, plaintiff paid said funds to the County Collector of said St. Clair County, and that said funds were duly recorded and posted on the 6th day of August, 1930, in said Collector's Book for the year 1926 for the Town of East St. Louis, Personal Property, St. Clair County, No. 1, Page 177, Line 21; that on or about the 5th day of March, 1936, Louis P. Zerweck, State's attorney to and for the County of St. Clair and State of Illinois, filed a suit in the Circuit Court of St. Clair County, Illinois, wherein the People of the State of Illinois were plaintiffs and the Meyer Hurwitz Jewelry Company, a corporation, was defendant, being cause No. 1689, and wherein plaintiff sought to collect general personal property taxes in the sum of $1311.87, including the sum of $234.75 for the year 1925; that pursuant thereto said defendant, Meyer Hurwitz Jewelry Company, filed its answer, thereby generally denying plaintiff's cause aforementioned and affirmatively pleading payment of the sums set up in the various paragraphs in said cause, but omitting the plea of payment of said general taxes on personal property for the year 1925; thereby admitting that said 1925 personal property taxes remained unpaid; that said cause was set for trial in said Circuit Court, and that on or about the 20th day of May, 1938, for reasons unknown to this plaintiff, and without judicial hearing, said Meyer Hurwitz Jewelry Company produced said receipt No. 6270 theretofore issued by this plaintiff for the 1926 personal property taxes as aforesaid and thereby purporting to have paid the personal property taxes for the year 1925; that plaintiff's said receipt No. 6270 was then and there placed in and

made a part of said court file No. 1689 in said Circuit Court, although said receipt was not material or relevant to the issues of said cause."

Plaintiff pleaded a statute of the State of Illinois which declared it to be a felony for a Justice of the Peace to embezzle tax money coming into his hands as such justice. The petition then alleged the following:

"Plaintiff further alleges that well knowing the aforementioned facts or by the exercise of due care and diligence, defendant, its agents, servants and employees could have known said facts, but recklessly and in wanton disregard of plaintiff's rights and intending wickedly, designedly and maliciously to injure plaintiff in his good name, fame and credit, and to impeach his honesty, integrity, virtue or reputation and to expose him to public hatred, contempt, ridicule, financial injury and deprive him of public confidence in him as an attorney at law or as a public officer; to cause it to be believed by his neighbors and among good and worthy citizens including his clients as a lawyer and a public officer of the State of Illinois, particulary St. Clair County thereof, and of the State of Missouri, particularly the City of St. Louis therein, that plaintiff had been guilty of corrupt, dishonest and dishonorable and criminal conduct in and about the receiving by virtue of his office and unlawfully withholding, secreting and converting to his own use money belonging to the County of St. Clair and State of Illinois, did falsely, wrongfully, wickedly, designedly with malice and malicious intent toward plaintiff print and publish of and concerning plaintiff on the 21st day of May, 1938, in a newspaper known as the 'St. Louis Globe-Democrat' the following false, libelous, malicious, scandalous and defamatory words, article and matter, to-wit:

" 'WANTS J. P. TO EXPLAIN TAX RECEIPT HE ISSUED.'

" 'State's Attorney L. P. Zerweck said yesterday he would question Justice of the Peace, Walter G. Grossman, of Belleville, concerning a receipt of $234.75 for personal property taxes, issued by him to the Meyer Hurwitz Jewelry Company of East St. Louis.

" 'In Circuit Court yesterday the Company was asked to pay $1311.87 in personal property taxes. The company contended it owed but $633.09, and produced two receipts, one for $234.75 allegedly paid to Grossman May 16, 1930, and another for $82.22, paid January 30, 1935, to the late Justice of the Peace Louise E. Wangelin. The Hurwitz Company asked for and was allowed by the court deduction for the amounts on the two receipts, as well as $361.81 for erroneous assessment. The court placed a judgment of $633.09 against the company, which it said would be paid next week.' Meaning that he, the plaintiff, while in the exercise of his duties as a public officer, that of justice of the peace, received the sum of $234.75 for personal property taxes due said St. Clair County and State of Illinois from Meyer Hurwitz Jewelry Company, a corporation, and

that plaintiff issued his receipt therefor but that plaintiff in violation of the statutes and laws of the State of Illinois, wrongfully, unlawfully, secretly converted to his own use, with intent so to do, and kept said money from the 16th of May, 1930, to the date of the publishing as aforesaid of the aforementioned article, and meaning further that the State's Attorney, Louis P. Zerweck for and on behalf of the County of St. Clair and State of Illinois would summon plaintiff for questioning concerning said receipt, and plaintiff's alleged violation of said laws of the said State of Illinois and the trust and confidence of his office, and that plaintiff was guilty of corruption and fraud in public office and of the crime of embezzlement of public funds.

''Plaintiff further states that the article so printed and published by defendant in said St. Louis Globe-Democrat meant, and defendant intended it to mean that plaintiff while in the exercise of his duties of a public officer, that of justice of the peace, received said sum of money belonging to the County of St. Clair and State of Illinois for personal property taxes, and that plaintiff unlawfully, wrongfully and in violation of the laws of the State of Illinois failed to account for said funds and converted said funds to his own use, and that plaintiff would be questioned by the said State's Attorney, Louis P. Zerweck; and further meaning that said Louis P. Zerweck had in mind that plaintiff had violated said laws, and that if said facts as printed in said article were true said State's attorney would prosecute plaintiff for violation of said laws, and plaintiff states that the readers of said article understood it to mean that plaintiff had violated the laws of the State of Illinois and was guilty of embezzlement and converting to his own use, as aforesaid, said fund of $234.75 belonging to the County of St. Clair and State of Illinois.''

The remaining portions of the petition are not material.

 It will be noted that the second paragraph of the publication purports to be a report of a trial had in a circuit court of the State of Illinois. Plaintiff did not allege in his petition that the report of the judgment and proceeding was not accurate. That portion of the publication was therefore privileged. [36 C. J. 1275, sec. 266; Meriwether v. Publishers: George Knapp & Co., 211 Mo. 199, 109 S. W. 750, l. c. 755.] In Brown v. Globe Printing Co., 213 Mo. 611, 112 S. W. 462, l. c. 469, this court said:

''In this connection, it may be said that a publication is not shorn of its privileged character, if such it ever possessed, because abridged and condensed, if it remain fair and impartial. [Boogher v. Knapp, supra; Newell on Slander & Libel (2 Ed.), sec. 161; 18 Am. & Eng. Ency. of Law (2 Ed.), 1045; Folkard's Starkie on Slander & Libel, sec. 227; Cowley v. Pulsifer, supra.] So, full or abridged reports of a legal proceeding continued from day to day, if as fair and impartial as publications under the circumstances will permit, are privileged.''

██ Appellant alleged in his petition that the defendant could have, by the exercise of due care and diligence, ascertained that receipt number 6270, which the court allowed as a credit for taxes due for the year 1925, was in truth and in fact a receipt for taxes due for the year 1926, and the credit should not have been allowed. In other words, defendant could have ascertained that the judgment was erroneous. Note his argument:

"Respondent through malice, recklessness or negligence, failed to consult said records in order to obtain the true facts. If Respondent had, it would have discovered that the Hurwitz Company applied a 1926 tax receipt in payment of 1925 taxes, and that the County's tax attorney 'stood by' and raised no objection. Had Respondent printed the facts as it would have found them, had it taken the trouble to investigate, no libel could exist, and reflection of conversion of public funds or fraud in office would not have been imputed to Appellant."

The defendant was not bound to go back of the judgment to determine the correctness thereof. There is nothing in Brown v. Globe Printing Co., 213 Mo. 611, 112 S. W. 462, or Warren v. Pulitzer Pub. Co., 336 Mo. 184, 78 S. W. (2d) 404, or other cases cited by appellant, that could be construed as imposing any such duty upon respondent.

██ Appellant contends that in interpreting an article as to whether it is or is not libelous the entire article must be construed as a whole. That is the true rule. [See 36 C. J., 1157, sec. 22.] Appellant then says that the headline of the article, "Wants J. P. To Explain Tax Receipt He Issued," and the statement following to the effect that the State's attorney would question plaintiff concerning a receipt of $274.75 for taxes, when read in connection with the second paragraph, rendered the entire article libelous. Here again appellant did not plead that the State's attorney made no such statement as the article mentioned. If the statement of the State's attorney was libelous then of course respondent is not immune from liability for its publication, because the statement of the attorney was not a part of the court proceedings. However, when the entire article is considered as a whole in view of the judgment of the court on the tax matter, we do not believe the average reader would understand therefrom that appellant had been guilty of embezzlement or any other crime. The average citizen knows and understands that mistakes frequently occur in the collection of taxes. The very judgment reported in the publication of the alleged libelous article revealed that there had been an erroneous assessment of $361.81. The rule of interpreting an alleged libelous article is stated in 36 C. J. 1157, sec. 21, as follows:

"It is rather the meaning that the words in fact conveyed; rather the effect which the language complained of was fairly calculated to produce and would naturally produce upon the minds of persons of

reasonable understanding, discretion, and candor, taking into consideration accompanying explanations and the surrounding circumstances which were known to the hearer or reader.''

[Diener v. Star-Chronicle Pub. Co., 232 Mo. 416, 135 S. W. 6; Clark v. McBaine, 299 Mo. 77, 252 S. W. 428.] The article, as a whole, reveals that it was a report of a court proceeding and its judgment, made in the ordinary course of the newspaper business, without any unfair comment. Therefore the article was not libelous. In Hanson v. Bristow (Kan.), 123 Pac. 725, l. c. 727, the court said:

''The office of the *innuendo* is not to enlarge or restrict the natural meaning of the words. It cannot enlarge ambiguous words, not necessarily of themselves importing crime, beyond the averment of the speaker's intention.''

So in this case, appellant sought to make a case of libel against the respondent by placing a strained construction on the published article, and by *innuendo* make that article charge appellant with having been guilty of embezzlement when in fact no such imputation could be drawn therefrom by the average reader.

The judgment is affirmed. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.